1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

**United States District Court**
**For the Northern District of California**

11   JUAN CUEVAS,                                      No. C 12-05916 CRB

12               Plaintiff,                            **ORDER GRANTING SUMMARY**
                                                       **JUDGMENT**
13        v.

14   SKY WEST AIRLINES,

15               Defendant.
                                                    /
16

17        In this wrongful termination suit, Defendant SkyWest Airlines moves the Court for

18   summary judgment, or in the alternative, summary adjudication of Plaintiff's claims. See

19   generally Mot. (dkt. 73).  Because no reasonable jury could find that Defendant terminated

20   Plaintiff in retaliation for making safety complaints, the Court GRANTS Defendant's motion

21   as to Plaintiff's retaliatory termination claims (second and third causes of action).  Because

22   Plaintiff was an at-will employee and had no employment contract, the Court GRANTS

23   Defendant's motion as to Plaintiff's breach of implied covenant of good faith and fair dealing

24   and breach of contract of continued employment claims (fourth and fifth causes of action).

25   Because the record is devoid of evidence showing that Defendant was negligent in hiring or

26   supervising the employees who terminated Plaintiff, the Court GRANTS Defendant's motion

27   as to Plaintiff's negligent supervision claim (sixth cause of action).  Accordingly, the Court

28   GRANTS Defendant's Motion for Summary Judgment in whole.

**United States District Court**
For the Northern District of California

1

**I.       BACKGROUND**

2          Plaintiff Juan Cuevas ("Cuevas") worked as a ramp agent for Defendant SkyWest

3    Airlines ("SkyWest") at San Francisco International Airport ("SFO") from November 7,

4    2006 until December 27, 2011.  Compl. (dkt. 1) ¶ 7; Cuevas Decl. (dkt. 96) ¶ 2.  As a ramp

5    agent, Cuevas was responsible for "loading and unloading baggage, pushing and parking

6    aircraft, loading and unloading commodities for consumption by passengers, and servicing

7    aircraft."  Cuevas Decl. ¶ 3.  Juan De La Cruz ("De La Cruz") became SkyWest's Hub

8    Director at SFO in November 2010.  Id. ¶ 9; De La Cruz Decl. ¶ 1.  As Hub Director, Juan

9    De La Cruz was in charge of SkyWest's SFO customer service and ramp operations.  Cuevas

10   Decl. ¶ 9.  Cuevas, a ramp agent, and his direct supervisors, the ramp/shift managers,

11   reported upstream to De La Cruz.  De La Cruz claimed to have had an "open door policy"

12   when he began at SFO, encouraging employees to come directly to him with work-related

13   concerns.  Cuevas Decl. ¶ 9.  After the events described below, on December 27, 2011, De

14   La Cruz terminated Cuevas for insubordination.  Id. ¶ 21; Compl. ¶ 14.

15          **A.       The Traffic Admonishment**

16          The story leading to Cuevas's termination begins on July 26, 2010.  During his shift

17   that day, Cuevas received a $50.00 citation for failing to stop at a stop sign while driving a

18   baggage cart, also known as a "tug."  Cuevas Decl. ¶ 5.  Cuevas failed to stop because the

19   tug he was driving had faulty brakes.  Id.  Cuevas had noticed during a pre-shift inspection

20   that the tug's brakes were "somewhat weak," but did not believe the tug was unsafe at the

21   time.  Id. ¶ 4.  After receiving the citation, Cuevas "red tagged" the tug, indicating it was

22   unsafe and in need of repair, and placed the tug out of service.  Id. ¶ 5.

23          Cuevas took the citation to his then-supervisor, Tony Booker ("Booker"), and

24   explained the incident and the faulty brakes.  Id. ¶ 6.  Booker told Cuevas that he would

25   "take care of" the citation if, after a SkyWest mechanic inspected the tug, it proved that the

26   brakes were defective.  Id.  Cuevas prepared an incident report at Booker's request, id.,

27

28

2

1   though the parties have been unable to locate the report since.[1]  SkyWest Ground Equipment

2   Maintenance inspected the tug and found that the brakes were faulty; Booker again told

3   Cuevas that he would "take care of" the citation, and that Cuevas had no further

4   responsibilities with respect to the incident.  Cuevas Decl. ¶ 7.  As far as Cuevas was

5   concerned, the citation issue had been resolved.  See id. ¶¶ 7-8.

6       **B.      Safety Complaints**

7       Cuevas became concerned about the safety of SkyWest's ground equipment during

8   late Summer 2011.  Cuevas Decl. ¶ 10.  In August 2011, Cuevas began taking pictures with

9   his camera phone of damaged and unsafe SkyWest ground equipment, and he discussed the

10  pictures and safety issues with coworkers.  Id. ¶¶ 10-11; see id. Ex. A.

11      Cuevas took advantage of De La Cruz's "open door policy" to share his concerns

12  regarding workplace safety.  Cuevas Decl. ¶¶ 9-10.  Cuevas recalls having "several

13  conversations" with De La Cruz about unsafe SkyWest ground equipment.  Id. ¶ 10.  Cuevas

14  estimates that these conversations took place between August and October 2011, which

15  coincides with when Cuevas took pictures of equipment.[2]  Cuevas Decl. ¶ 10.

16      In addition to sharing pictures and safety issues with De La Cruz, Cuevas also shared

17  his concerns with the U.S. Department of Homeland Security during an informational

18  meeting in the summer of 2011.  Id. ¶ 12.  Cuevas, feeling that his concerns remained

19  unresolved, called SkyWest's corporate hotline and lodged a "Safety Concern Report" on

20  October 25, 2011.  Id. ¶ 13.  De La Cruz maintains that he knew nothing about any of these

21  complaints, including the formal safety report and the meeting with Homeland Security, until

22  after commencement of this litigation.  De La Cruz Decl. ¶¶ 11-12.

23      On November 15, 2011, Cuevas received a telephone call from Michael Eisenstat

24  ("Eisenstat"), Manager of Safety Investigation for SkyWest, and the two discussed Cuevas's

25

26      [1]Booker does not remember the report, or requesting one from Cuevas, but states that it would
    have been his practice to request one in a situation such as this.  Booker Depo. (dkt. 98-2) at 47:5-47:17.

27      [2]SkyWest disputes this characterization, as De La Cruz claims never to have received a safety
28  complaint from Cuevas.  See De La Cruz Decl. (dkt. 73-1) ¶¶ 11-12.  De La Cruz's report following a
    December 13, 2011 meeting with Cuevas shows that Cuevas made at least some general safety
    complaints during that meeting.  See De La Cruz Depo. Ex. 13 (dkt. 97-8).

**United States District Court**
For the Northern District of California

1   October Safety Concern Report.  Cuevas Decl. ¶ 16.  Cuevas's identity as the complainant

2   remained confidential in accordance with SkyWest policy.  See Eisenstat Decl. (dkt. 73-4) ¶

3   6.  After the call, Cuevas e-mailed nine photographs to Eisenstat depicting unsafe SkyWest

4   equipment.  Cuevas Decl. ¶ 16.  No one at SkyWest followed up with Cuevas about the

5   photographs.[3]  Id.

6         **C.**     **Suspensions and Termination**

7        In November 2011, well over a year after Cuevas's July 26, 2010 traffic citation,

8   Cuevas reported to work to find that SFO had deactivated his security badge for failure to

9   pay the $50.00 fine.  Id. ¶ 14.  Cuevas missed three days of work without pay, during which

10  he took a required class and an exam, and paid the $50.00 fine; afterwards, SFO reactivated

11  his security badge.  Id.  Cuevas felt that he should not have been responsible for the fine,

12  especially given his interactions with Booker in 2010.  See id. ¶¶ 14-15.  Cuevas explained

13  the issue to De La Cruz's administrative assistant, Shannan Johnson.  Id. ¶ 15.  De La Cruz

14  then decided to investigate the July 2010 incident in order to determine if Cuevas might be

15  eligible for reimbursement from SkyWest.  See id. ¶ 17; De La Cruz Decl. Ex. E.

16       Following his investigation, De La Cruz decided that SkyWest would not reimburse

17  Cuevas for the $50.00 fine.  Cuevas Decl. ¶ 17; De La Cruz Decl. Ex. E.  Cuevas's

18  supervisor, Miguel Diaz ("Diaz"), informed Cuevas of the decision on December 12, 2011,

19  and Cuevas requested a meeting with De La Cruz.  See Opp'n (dkt. 95) at 12; Cole Decl.

20  (dkt. 97) Ex. B at 212-14.

21       On December 13, 2011, Cuevas, De La Cruz, and Diaz met to discuss De La Cruz's

22  decision to deny reimbursement.  Cuevas Decl. ¶ 17; De La Cruz Decl. Ex. E.  De La Cruz

23

24

25

26

27      [3]The parties disagree on this, as Eisenstat states that he repeatedly followed up with Cuevas for descriptions of the safety hazards contained in the photographs, but Cuevas never responded.  Eisentat

28  Decl. (dkt. 73-4) ¶ 5.  Eisenstat states that the photographs alone did not make Cuevas's safety concerns immediately clear, and that he needed more information to appropriately evaluate and address Cuevas's concerns.  See id.; see also Cuevas Decl. Ex. A.

United States District Court
For the Northern District of California

1  explained that he found the tug had not been serviced for faulty brakes.[4]  Cuevas Decl. ¶ 17;

2  De La Cruz Decl. Ex. E.  Cuevas told De La Cruz that the decision was unfair, and also that

3  SkyWest's ground equipment continued to have "serious problems."  Cuevas Decl. ¶ 17.  De

4  La Cruz offered to investigate further and reconsider his decision, and asked Cuevas to

5  provide a written statement documenting the 2010 incident.  Id.; see De La Cruz Depo. Ex.

6  13 (dkt. 97-8).  Cuevas believed such a report to be futile, and refused to write one, even

7  while on the clock.  Cuevas Decl. ¶ 17; see De La Cruz Depo. Ex. 13; Diaz Depo. Ex. 28

8  (dkt. 97-13).  Additionally, as part of the investigation, De La Cruz asked Cuevas to sign an

9  Investigation Confidentiality Memo ("ICM"), a Human Resources ("HR") document binding

10  employees not to discuss an ongoing investigation with others.  Cuevas Decl. ¶ 17; see De La

11  Cruz Decl. Ex. F.  Cuevas felt that signing such a document was unfair, and refused to do so.

12  Cuevas Decl. ¶ 17.  De La Cruz then suspended Cuevas without pay for five days, until

13  December 19, 2011.  Id.

14      Cuevas and De La Cruz met again on December 19, this time with an HR

15  representative named Andrea Knight ("Knight").  Id. ¶ 18.  Cuevas refused to write an

16  incident report describing the events from July 2010, and would not sign the ICM.  Id.

17  Cuevas felt that it was unreasonable and futile to write a statement explaining the July 2010

18  incident when he had already prepared one around the time of the incident.  Id. ¶¶ 17-18; see

19  Knight Decl. (dkt. 73-2) Ex. A.  De La Cruz explained that the previous report could not be

20  located, and that he needed a written account from Cuevas.  Knight Decl. Ex. A.  Cuevas

21  refused to write a statement.  Id.  De La Cruz again suspended Cuevas.  Cuevas Decl. ¶ 18.

22      When the parties next met on December 21, Cuevas still refused to write the report or

23  sign the ICM.  See id. ¶ 19; Knight Decl. Ex. B.  De La Cruz suggested that Cuevas could

24  instead sign a statement that he was "satisfied with the . . . investigation," presumably giving

25

26  [4]E-mail records show that De La Cruz corresponded with maintenance, and maintenance told
De La Cruz that the tug had not been serviced for faulty brakes.  See De La Cruz Depo. Ex. 14 (dkt. 97-
8).  This turned out to be incorrect.  Service records produced in this litigation show that ground
27  maintenance fixed the tug's brakes on July 27, 2010, the day after Cuevas ran the stop sign.  See
Suronen Depo. Ex. 8 (dkt. 98-6).  The parties do not dispute that the brakes were faulty, only whether
28  De La Cruz knew they were faulty when he refused to reimburse Cuevas.  See Mot. at 5 n.5; Opp'n at
11-13; De La Cruz Decl. ¶ 18.

**United States District Court**
For the Northern District of California

1    up on the $50.00 reimbursement.  Cuevas Decl. ¶ 19; Knight Decl. Ex. B.  Cuevas declined,

2    as he was not satisfied with the investigation.  Cuevas Decl. ¶ 19.  De La Cruz and Knight

3    explained the importance of documentation and stressed that Cuevas was at risk of losing his

4    job.  Knight Decl. Ex. B.  De La Cruz suspended Cuevas for a third time.  Cuevas Decl. ¶ 19.

5         Pennie Hancock ("Hancock"), a SkyWest HR employee, reached out to Cuevas by

6    telephone on December 22 to discuss Cuevas's suspension and continued employment with

7    SkyWest.  See id. ¶ 20.  Hancock sought to clear up any confusion about the written

8    statement De La Cruz had asked Cuevas to provide.  Hancock Decl. (dkt. 73-3) ¶ 7.  She

9    "urge[d Cuevas] to provide the written statement to avoid termination."  Id.  Hancock also

10   asked Cuevas to sign the ICM, and said that if he did not sign, his future at SkyWest could be

11   in jeopardy.  See Cuevas Decl. ¶ 20.

12        De La Cruz and Cuevas spoke on the phone shortly after Cuevas's conversation with

13   Hancock.  See Hancock Decl. Ex. A.  De La Cruz told Cuevas that he would issue a Letter of

14   Instruction ("LOI")—a SkyWest written warning—to resolve the disagreement.  See

15   Hancock Decl. Ex. A; De La Cruz Decl. ¶ 16; Cuevas Decl. ¶ 21.  De La Cruz asked Cuevas

16   to come in and sign the LOI with another supervisor on December 24.  See Hancock Decl.

17   Ex. A.  Cuevas stated that he would not sign the letter.  Id.  De La Cruz asked Cuevas to take

18   the weekend off, and come in on December 27 for a meeting.  Id.

19        Cuevas came in on December 27 to meet with De La Cruz.  Cuevas Decl. ¶ 21.  De La

20   Cruz presented Cuevas with the LOI he had referenced on the phone.[5]  Id.  Cuevas refused to

21   sign the LOI because he felt that he and SkyWest had not reached an agreement regarding the

22   dispute.  Id.  De La Cruz fired Cuevas for insubordination.  Id.; see Hancock Decl. Ex. A.

23

24

25   _____

[5]The LOI recited the events leading to Cuevas's suspensions, starting with Cuevas's refusal to write a report on December 13, 2011.  De La Cruz Decl. Ex. G.  The LOI also recited what happened at the meetings on December 19 and 21, and described Cuevas's telephone calls with Hancock and De La Cruz on December 22.  Id.  The LOI cited Cuevas's repeated insubordination, and noted that insubordination is grounds for termination under SkyWest policy.  Id.  The LOI requested Cuevas's future cooperation with respect to supervisor requests, stated that his signature was "not an admission of guilt or liability," and provided an opportunity for Cuevas to comment in writing.  Id.  The signed LOI is essentially a promise from the employee that he understands his supervisor's complaints and will "do better" next time.

6

**United States District Court**
For the Northern District of California

### D.    Lawsuit

Cuevas filed this case on November 19, 2012, alleging six causes of action against SkyWest and Juan De La Cruz.  See generally Compl. (dkt. 1).  Cuevas voluntarily dismissed De La Cruz as a defendant on March 22, 2013.  See Dismissal Ord. (dkt. 22).  Cuevas also voluntarily dismissed his first cause of action, brought under a federal whistle blower statute, though he never filed an amended complaint.  See Case Mgmt. Stmt. (dkt. 41) at 6.

Cuevas's five remaining causes of action are for: (1) wrongful termination in retaliation for Cuevas's safety complaints under California Labor Code section 6310; (2) wrongful termination in violation of public policy; (3) breach of implied covenant of good faith and fair dealing; (4) breach of implied contract of continued employment; and (5) negligent supervision of De La Cruz, with respect to his decision to terminate Cuevas.  See Compl. ¶¶ 23-36.  SkyWest now moves the Court for summary judgment, or, in the alternative, for summary adjudication of Cuevas's claims.  See generally Mot.

## II.    LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  In ruling on summary judgment, a court must draw all reasonable factual inferences in favor of the nonmoving party.  Anderson, 477 U.S. at 255.

If the moving party bears the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."

1  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Where the

2  nonmoving party will have the burden of proof at trial on a particular issue, however, the

3  moving party need only point out "that there is an absence of evidence to support the

4  nonmoving party's case."  Id.; Celotex, 477 U.S. at 325.  If the moving party points out an

5  absence of evidence, the burden then shifts to the nonmoving party to show, by affidavit or

6  otherwise, "specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S.

7  at 250; Fed. R. Civ. P. 56(e).  Summary judgment should be entered against a party who,

8  having had adequate time for discovery, fails to show "the existence of an element essential

9  to that party's case, and on which that party will bear the burden of proof at trial."  Celotex,

10  477 U.S. at 322-23.

11  **III.    DISCUSSION**

12      **A.    Plaintiff's Causes of Action**

13      As stated above, Cuevas voluntarily dismissed his first cause of action, and his second

14  through sixth causes of action remain.  The Court will now discuss each cause of action in

15  turn.

16      **1.    Wrongful Termination (California Labor Code Section 6310)**

17      Cuevas's first remaining cause of action is for wrongful termination under California

18  Labor Code section 6310.  See Compl. ¶¶ 24-25.  Section 6310 prohibits an employer from

19  terminating an employee because the employee has made "any oral or written complaint

20  to . . . his or her employer . . . ." about unsafe working conditions or unsafe work practices.

21  Cal. Lab. Code § 6310(a).  Cuevas claims that his suspensions and termination in December

22  2011 were not based on insubordination, but were instead SkyWest retaliating against

23  Cuevas for making safety complaints.  Opp'n at 1.

24      Courts considering claims under section 6310—and similar wrongful termination

25  statutes—have applied the three-part burden-shifting framework set forth by the United

26  States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See

27  Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005); Morgan v. Regents of Univ.

28  of Cal., 88 Cal. App. 4th 52, 68 (2000); McDaniels v. Mobil Oil Corp., 527 F. App'x 615,

8

**United States District Court**
For the Northern District of California

1   617 (9th Cir. 2013) (memorandum opinion).  The first step requires the plaintiff to

2   demonstrate a prima facie case of retaliation.  Morgan, 88 Cal. App. 4th at 68.  If the plaintiff

3   succeeds, he has established a rebuttable presumption of discrimination.  See Reeves v.

4   Safeway Stores, Inc., 121 Cal. App. 4th 95, 111-12 (2004).  The burden then shifts to the

5   defendant to show a legitimate, non-retaliatory reason for its adverse action against the

6   plaintiff.  Morgan, 88 Cal. App. 4th at 68.  If the defendant puts forth a legitimate reason, the

7   presumption of discrimination simply disappears.  Reeves, 121 Cal. App. 4th at 112.  The

8   final burden then rests with the plaintiff to prove that the defendant's proffered explanation is

9   merely pretext for underlying retaliation.  Morgan, 88 Cal. App. 4th at 68.  At this point, "the

10  question becomes whether the plaintiff has shown, or can show, that the challenged action

11  resulted in fact from [retaliatory] animus rather than other causes."  Reeves, 121 Cal. App.

12  4th at 112.

13                          **a.      Prima Facie Case**

14          Cuevas succeeds in carrying his burden at summary judgment to establish a prima

15  facie case.  The plaintiff's burden at the prima facie stage is "not onerous."  See Tex. Dep't

16  of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The three elements of a prima facie

17  case under section 6310 are: (1) that the plaintiff engaged in a "protected activity"; (2) the

18  defendant subjected the plaintiff to an "adverse employment action"; and (3) a causal link

19  between the two—that the defendant took action because of the plaintiff's protected activity.

20  Yanowitz, 36 Cal.4th at 1042; see Harris v. City of Santa Monica, 56 Cal.4th 203, 214-15

21  (2013).

22                          **i.      Protected Activity**

23          First, Cuevas engaged in a "protected activity" by making safety complaints to his

24  employer.  A protected activity implicates an important public interest tethered to

25  fundamental constitutional or statutory policies.  Lukov v. Schindler Elevator Corp., No. 11-

26  201, 2012 WL 5464622, at *4 (N.D. Cal. Nov. 8, 2012) (internal citations and quotation

27  marks omitted).  California Labor Code section 6310 is tethered to the policy of ensuring a

28  safe workplace for all employees.  See id.; see also Cal. Lab. Code § 6300.

9

United States District Court
For the Northern District of California

1    Drawing all reasonable factual inferences in favor of Cuevas, the record demonstrates

2  that Cuevas made several complaints to De La Cruz between August and October 2011 and

3  lodged a formal safety complaint with SkyWest headquarters on October 25, 2011.  Cuevas

4  Decl. ¶¶ 10, 13.  Though De La Cruz claims never to have spoken to Cuevas about safety

5  issues, at least not until December 13, 2011, the Court is at minimum faced with a material

6  factual dispute.[6]

7                              **ii.    Adverse Employment Action**

8    Second, the parties do not dispute that SkyWest subjected Cuevas to an "adverse

9  employment action."  Both Cuevas's suspensions and his termination qualify as adverse

10  employment actions.  Cuevas has established this element of his prima facie case.

11    The parties do disagree as to adverse actions beyond the suspensions and termination.

12  Cuevas argues that SkyWest denying his $50.00 reimbursement and asking him to sign the

13  ICM were further adverse actions.  Opp'n at 18-19.  Specifically, as to the ICM, Cuevas

14  argues that the ICM unlawfully and unreasonably restricted his right to make further safety

15  complaints.  Id.  The ICM only asked Cuevas not to discuss the ongoing investigation, which

16  involved his July 2010 traffic admonishment and the faulty brakes; the document did not

17  attempt to silence Cuevas with respect to future issues with workplace safety.  See De La

18  Cruz Decl. Ex. F.  Furthermore, in reference to SkyWest's denial of the $50.00

19  reimbursement, the Court is not convinced that this suffices as an adverse employment

20  action.  Cf. Tyler v. Ispat Inland Inc., 245 F.3d 969, 972 (7th Cir. 2001) ("[T]he denial of a

21  monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an

22  adverse employment action if it is wholly within the employer's discretion to grant or deny

23  and is not a component of the employee's salary.").  Even if SkyWest's reimbursement

24

25

26

27    [6]Additionally, "section 6310 applies to employers who retaliate against employees whom they
believe intend to file workplace safety complaints." Lujan v. Minagar, 124 Cal. App. 4th 1040, 1045-46
(2005) (emphasis added).  Cuevas simply mentioning generalized safety concerns in his December 13,
28  2011 meeting with De La Cruz and Diaz is sufficient to afford him protection under section 6310. De
La Cruz feasibly could have feared future safety complaints based on what transpired in that meeting.

1  denial does qualify as an adverse employment action, Cuevas runs into the same issues set

2  forth below when it comes to proving pretext.[7]

### iii.    Causation

4  Finally, Cuevas has met his burden at summary judgment to show a causal link

5  between his safety complaints and subsequent suspensions and termination.  The causation

6  element of a plaintiff's prima facie case requires the employer's retaliatory animus to be a

7  "but-for cause of the employer's adverse action."  Reeves, 121 Cal. App. 4th at 108 (citations

8  omitted).  Evidence of an employer's knowledge of the employee's protected activity, where

9  the adverse employment action follows soon after, can be sufficient to support an inference

10  of causation.  See Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 614-15 (1989).

11

12  SkyWest argues that the two people who had primary responsibility for terminating

13  Cuevas, De La Cruz and Hancock, had no knowledge of Cuevas's prior safety complaints.

14  Mot. at 15-17.  If the parties did not know about Cuevas's complaints, then surely he could

15  not have been fired because of those complaints.  Cf. Reeves, 121 Cal. App. 4th at 109

16  ("[I]gnorance of a worker's protected activities or status does not afford a categorical defense

17  unless it extends to all corporate actors who contributed materially to an adverse employment

18  decision.").  Cuevas tells a different story, however, that indicates De La Cruz had heard

19  several of Cuevas's complaints before the suspensions and termination occurred.  See Cuevas

20  Decl. ¶ 10.  Additionally, De La Cruz's meeting minutes from the date of Cuevas's first

21  suspension, December 13, 2011, state that Cuevas mentioned some general safety complaints

22  at that time.  See De La Cruz Depo. Ex. 13.  Resolving the factual issue in favor of Cuevas, a

23  reasonable jury could find that SkyWest knew about Cuevas's complaints when it decided to

24  fire Cuevas.  Given that his suspensions and termination followed within a relatively short

25  period of time, this is at least sufficient to create a jury issue as to the causal link between

26

27

28       [7]Additionally, if Cuevas bases his retaliation claim on the $50.00 reimbursement alone, his damages would likely be very limited.

United States District Court
For the Northern District of California

1  Cuevas's termination and protected safety complaints.  Accordingly, Cuevas has established

2  a prima facie case.

### b.      Legitimate Reason

4      Next, the burden shifts to SkyWest to demonstrate a legitimate, non-retaliatory reason

5  for the adverse employment action.  See Morgan, 88 Cal. App. 4th at 68.  SkyWest offers

6  substantial evidence that it suspended and fired Cuevas for repeated instances of

7  insubordination.

8      The record demonstrates that Cuevas refused to comply with a supervisor's request on

9  multiple occasions.  Cuevas expressed dissatisfaction with De La Cruz's decision to deny the

10  $50.00 reimbursement, and De La Cruz requested a written report from Cuevas to reconsider

11  his decision.  Given that Cuevas's previous written account could not be located, De La Cruz

12  asking Cuevas to provide a new written statement was not unreasonable.  Cuevas repeatedly

13  refused to write a report or sign HR documents, despite multiple suspensions, meetings, and

14  telephone calls.  SkyWest warned Cuevas that he could be terminated for insubordination,

15  yet he persisted.  Cuevas even refused to sign a written warning to save his job, which only

16  required him to admit that he understood why he had been suspended, and to be more

17  cooperative in the future.  The parties appear to have reached a stalemate, and SkyWest did

18  not have an obligation to retain an at-will employee who had been insubordinate on several

19  occasions.  Accordingly, SkyWest has offered sufficient evidence of a legitimate motivation

20  for suspending and terminating Cuevas such that the burden shifts back to Cuevas to

21  demonstrate pretext.

### c.      Pretext

23      "If the employer produces substantial evidence of a legitimate . . . reason for the

24  adverse employment action, the presumption of [retaliation] created by the prima facie case

25  simply drops out of the picture."  Morgan, 88 Cal. App. 4th at 68 (internal citations and

26  quotation marks omitted).  The burden now shifts back to Cuevas to demonstrate that

27  SkyWest acted in retaliation, despite its proffered motivations.  See id.

28

United States District Court
For the Northern District of California

Cuevas fails to demonstrate pretext, even at the summary judgment stage.  To avoid summary judgment, an employee claiming retaliation must offer "substantial evidence" that the employer's stated justification for the adverse action was "untrue or pretextual, or evidence that the employer acted [in retaliation], or a combination of the two," such that a reasonable jury could find that the employer retaliated against the employee.  Horn v. Cushman & Wakefield W., Inc., 72 Cal. App. 4th 798, 806-07 (1999) (internal citations and quotation marks omitted).  A plaintiff does not meet this burden simply by showing that "the employer's decision was wrong, mistaken, or unwise.  Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  Id. at 807 (internal citations and quotation marks omitted).  Cuevas must therefore provide substantial evidence that SkyWest's claims of insubordination were a sham, or that SkyWest retaliated against him for making safety complaints, beyond the fact that De La Cruz made an obvious mistake in denying the $50.00 reimbursement.

In support of his pretext argument, Cuevas offers his declaration that during his December 22, 2011 telephone conversation with Hancock, she told him there would be "consequences" if he did not sign the ICM and "keep quiet."  Cuevas Decl. ¶ 20; Opp'n at 27.  At this point in time, Cuevas had already been suspended three times for refusing to provide a written incident report and sign the ICM.  Hancock's phone call was an effort to regain Cuevas's cooperation and avoid termination.  See Hancock Decl. ¶¶ 7-8.  Cuevas also suggests, without offering any concrete evidence, that De La Cruz's denial of the $50.00 reimbursement was deliberate and retaliatory, suggesting that the suspensions and termination that followed were as well.  Opp'n at 27-28.  Cuevas's version of the events does not amount to "substantial evidence" of retaliatory motive, such that the pretext question is worthy of trial.

**United States District Court**
For the Northern District of California

1    Cuevas has taken discovery in this matter, and fails to offer any concrete evidence that

2 SkyWest may have suspended or terminated him for any reason other than insubordination.[8]

3 SkyWest thoroughly documented all of its HR actions; the record contains meeting minutes,

4 e-mail records, HR forms, and numerous declarations and deposition excerpts.  Nowhere in

5 any of these documents is there a firm indication that Cuevas was being punished for

6 complaining about safety issues.  Cuevas has failed to show "the existence of an element

7 essential to [his] case, and on which [he] bear[s] the burden of proof at trial."  Celotex, 477

8 U.S. at 322-23.  Accordingly, the Court GRANTS SkyWest's Motion for Summary

9 Judgment as to Cuevas's second cause of action.

10                    **2.      Wrongful Termination (Common Law)**

11    In order to establish a prima facie case of wrongful termination in violation of public

12 policy, Cuevas must demonstrate: (1) the existence of an employer-employee relationship;

13 (2) a sufficient violation of public policy; and (3) damages.  See Lukov, 2012 WL 5464622,

14 at *6-7 (citing Holmes v. Gen. Dynamics Corp., 17 Cal.4th 1418, 1426 n.8 (1993)).  Here,

15 the Court assumes, without deciding, that the first and third elements are satisfied; the Court

16 focuses on the second element, whether Cuevas has demonstrated a sufficent violation of

17 public policy.

18    Cuevas's claim for wrongful termination in violation of public policy must be

19 dismissed because it is tethered to his section 6310 claim.  See Stevenson v. Superior Court,

20 16 Cal. 4th 880, 904 (1997) ("[W]hen a plaintiff relies upon a statutory prohibition to support

21 a common law cause of action for wrongful termination in violation of public policy, the

22 common law claim is subject to statutory limitations affecting the nature and scope of the

23 statutory prohibition.").  In an area such as employment law, where the legislature has

24 thoroughly considered and codified its policies, courts should closely link common law

25 wrongful discharge claims to relevant statutes and regulations.  See Green v. Ralee Eng'g

26 Co., 19 Cal.4th 66, 75-80 (1998); see also Ferretti v. Pfizer, Inc., 855 F. Supp. 2d 1017,

27

28    [8]Nor does Cuevas claim that further discovery might lead to such evidence.  See Fed. R. Civ.
P. 56(d).

14

1   1024-25 (N.D. Cal. 2012).  Here, Cuevas would have to establish a substantive violation of

2   section 6310 in order to bring a companion public policy claim.  Because Cuevas's section

3   6310 claim fails, as set forth in detail above, Cuevas retains no companion common law

4   claim for wrongful termination in violation of public policy.

5          Cuevas further argues that SkyWest wrongfully terminated his employment in

6   violation of the policy embodied in California Labor Code section 232.5.  Cuevas argues that

7   SkyWest terminated him for refusing to sign the ICM, a document Cuevas contends

8   unlawfully restricted his ability to communicate about his working conditions.  See Opp'n at

9   18-19; Cal. Lab. Code § 232.5.  Assuming section 232.5 can form the basis of a claim for

10  termination in violation of public policy, the ICM did not unlawfully restrict Cuevas's ability

11  to communicate safety issues.  The ICM dealt only with the investigation surrounding

12  Cuevas's traffic citation from July 2010 and did not restrict him from disclosing information

13  about his working conditions.  Cuevas fails to prove otherwise.  Therefore, the Court

14  GRANTS Defendant's Motion for Summary Judgment as to Cuevas's third cause of action.

15          **3.      Breach of Implied Covenant of Good Faith and Fair Dealing**

16          Cuevas alleges that SkyWest breached the implied covenant of good faith and fair

17  dealing by terminating Cuevas.  Compl. ¶ 30; see Opp'n at 29.  The parties do not dispute

18  that Cuevas was an at-will employee, but Cuevas argues that the SkyWest employee

19  handbook contained terms that created an implied employment contract.  See Opp'n at 29;

20  Mot. at 23-24.  Notably, Cuevas points to a provision of the employee handbook that "forbids

21  retaliation against any employee who, in good faith, reports a suspected violation of law or

22  policy."  Opp'n at 29.  Even if the handbook provision established an implied contract

23  between the parties—a question the Court need not consider—the Court has already

24  determined that Cuevas did not demonstrate retaliation.  Therefore, the Court GRANTS

25  Defendant's Motion for Summary Judgment as to Cuevas's fourth cause of action.

26          **4.      Breach of Contract for Continued Employment**

27          Cuevas also argues that SkyWest breached an implied contract between the parties

28  guaranteeing continued employment.  Compl. ¶¶ 32-35; Opp'n at 29.  The presumption of at-

United States District Court
For the Northern District of California

1   will employment created by California Labor Code section 2922 can be overcome by

2   evidence that the parties agreed to some limitation on the employer's power to terminate the

3   employment relationship. See Horn, 72 Cal. App. 4th at 817-18 (quoting Kovatch v.

4   California Cas. Mgmt. Co., 65 Cal. App. 4th 1256 (1998)).  Cuevas offers no evidence to

5   show that the parties intended to modify their at-will employment arrangement in any way.

6   Furthermore, the SkyWest employee handbook specifically states that SkyWest "may alter or

7   terminate" employment at-will. See Mot. at 23.  Accordingly, SkyWest retained its default

8   right under section 2922 to terminate Cuevas at will. See Cal. Lab. Code § 2922.  The Court

9   GRANTS Defendant's Motion for Summary Judgment as to Cuevas's fifth cause of action.

10                    **5.      Negligent Supervision**

11          Finally, Cuevas claims SkyWest was negligent in hiring, training, and supervising De

12  La Cruz.  See Compl. ¶ 36.  An employer may be liable for negligent supervision only if it

13  knows that the employee is "a person who could not be trusted to act properly without being

14  supervised." Juarez v. Boy Scouts of Am., 81 Cal. App. 4th 377, 395 (2000) (internal

15  citations and quotation marks omitted).  Negligent hiring, on the other hand, requires the

16  employer's knowledge of a candidate's "unfitness" or a failure to use reasonable care to

17  discover such unfitness before hiring. Id.  Cuevas attempts to place the burden on this issue

18  with SkyWest, but SkyWest's burden at summary judgment is only to point out an absence of

19  evidence in support of Cuevas's claim. See Soremekun, 509 F.3d at 984.  Cuevas must then

20  come forth with specific facts showing a genuine dispute worthy of trial. See Anderson, 477

21  U.S. at 250.  The only evidence Cuevas offers in support of this claim are Booker's

22  deposition statements questioning De La Cruz's management style. See Opp'n at 30.

23  Cuevas offers no evidence concerning SkyWest's hiring or supervision of De La Cruz.[9]

24  Accordingly, Cuevas does not meet his burden to survive summary judgment on this claim.

25  The Court GRANTS Defendant's Motion for Summary Judgment as to Cuevas's sixth, and

26  final, cause of action.

27

28          [9]Additionally, even if SkyWest was negligent in hiring, retaining, or supervising De La Cruz,
Cuevas does not allege any specific harm he suffered as a result.

16

**C.      Evidentiary Objections**

Because the Court grants SkyWest's Motion for Summary Judgment, SkyWest's remaining evidentiary objections, see Reply (dkt. 113) at 16-26, are dismissed as moot. Cuevas's objections to SkyWest's Reply declaration, (dkt. 119), are dismissed as well, because the Court did not rely on those pieces of contested evidence in reaching its decision.

**IV.      CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant SkyWest Airlines's Motion for Summary Judgment.  Defendant's evidentiary objections raised in its Reply and Plaintiff's objections in response are DISMISSED.

        **IT IS SO ORDERED.**

Dated: February 14, 2013                    CHARLES  R. BREYER
                                            UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

17